UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARRYL S. SCOTT,

                        Plaintiff,

        -vs-                                      96-CV-0351C

MELVIN HOLLINS, et al.,

                        Defendants.

APPEARANCES:   SUNIL BAKSHI, ESQ., Williamsville, New York, for Plaintiff.

                          ELIOT SPITZER, ESQ., ATTORNEY GENERAL OF THE STATE OF NEW YORK (ANN WILLIAMS, ESQ., Assistant Attorney General, of Counsel), Buffalo, New York, for Defendants.

## INTRODUCTION

Plaintiff Darryl S. Scott brings this action pursuant to 42 U.S.C. §1983. Plaintiff alleges that his health was seriously impaired by involuntary exposure to environmental tobacco smoke ("ETS") for extended periods while he was in the custody of the New York State Department of Correctional Services ("DOCS"). Plaintiff claims that defendants' deliberate indifference to his serious medical needs violated the Eighth Amendment prohibition against cruel and unusual punishment. In a Decision and Order dated February 14, 2002, the court granted in part defendants' first motion for summary judgment, dismissing plaintiff's claims under the New York State Clean Air Act and for injunctive relief, and dismissing all claims against defendants Coombe, Irvin, Bartlett, Kent, Hotchkiss, John Doe, and Jane Doe. Item 73. As a result, plaintiff's remaining Eighth

Amendment claim relates to his incarceration at Oneida and Livingston Correctional Facilities. In an order entered May 23, 2002, the court granted defendants permission to file a supplemental motion for summary judgment to further isolate the issues in advance of trial. Item 78.

Defendants filed this motion for summary judgment on August 30, 2002. Item 81. They argue that plaintiff has failed to establish either an Eighth Amendment violation, that he has suffered damages as a result of exposure to ETS, or that the defendants were personally involved in the alleged constitutional violations. Defendants also argue that they are entitled to qualified immunity. Plaintiff has filed two affidavits and two memoranda of law in opposition to defendants' summary judgment motion. For the reasons that follow, defendants' motion is denied.

## BACKGROUND AND FACTS

Plaintiff was convicted of robbery, second degree, in Erie County Court, Buffalo, New York, in 1995. He was received into the DOCS system on March 13, 1995, and was housed at Oneida Correctional Facility ("Oneida") from April 3, 1995 to September 12, 1995, and at Livingston Correctional Facility ("Livingston") from September 12, 1995 to May 30, 1996. Item 67, ¶¶ 2-4, 14. During the relevant time period, both facilities had policies which allowed smoking by inmates and staff in the living and recreation areas. Plaintiff's medical records indicate that he has a history of allergies, hay fever, headaches, heart palpitations, and sinusitis. Plaintiff is not a smoker and has never been diagnosed with a serious respiratory illness such as bronchitis or asthma.

In support of their motion for summary judgment, defendants offered a declaration of David Hughes, the plant superintendent at Oneida. Mr. Hughes stated that Oneida has a mechanical ventilation system consisting of fans that operate 24 hours per day. Item 83, ¶ 4. Air is supplied at 15 cubic feet per minute, in accordance with building codes for new buildings. *Id.* Fresh air is also supplied through windows and doors. During the relevant time periods, the ventilation system was fully maintained and functional. *Id.,* ¶¶ 6-7. Mr. Hughes admitted that "[w]hile undoubtedly plaintiff would be exposed to a minimal amount of second-hand smoke due to inmates smoking on the unit, proper ventilation was always provided to insure the residents' health and safety was not jeopardized." *Id.,* ¶12. Defendants also submitted a declaration of Kevin Fronk, maintenance supervisor at Livingston. Item 86. Mr. Fronk stated that Livingston was newly constructed and opened in 1991. Each building consists of two dormitory units, with approximately 60 inmates residing in each dormitory. *Id.,* ¶ 2. Each building is ventilated by three exhaust fans in addition to screened windows and doors. *Id.,* ¶ 3. During the relevant time period, the ventilation system in G-1 dormitory was fully maintained and functional and provided fresh air in excess of 10 cubic feet per minute, the standard set by the American Correctional Association. *Id.,* ¶¶ 4-8.

In a declaration, defendant Bryington stated that he was assigned to Livingston during the time period in which plaintiff was housed there. Item 84, ¶ 1. The dormitory units consisted of rows of inmate cubicles, which housed one bed and two lockers and were separated by walls approximately four feet high. *Id.,* ¶ 5. During the relevant time period, inmates were allowed to smoke in the dormitory units as well as the recreation and

TV areas. *Id.*, ¶ 7. Defendant Bryington stated that plaintiff never complained of cigarette smoke, and Bryington had no personal involvement in the decision to deny plaintiff a cubicle with a window. *Id.*, ¶¶ 9, 15.

Plaintiff's medical records include numerous references to allergies, hay fever, and sinusitis, and to prior nasal surgery. *See* Item 82, Exhibit A. Entries indicate that plaintiff frequently complained of symptoms including wheezing, shortness of breath, sinus infections, headaches, chest pain, rapid heartbeat, and difficulty sleeping. He also complained about his exposure to ETS. *Id.* Dr. Frederick Grabo, a doctor at Oneida during the relevant time period, stated in a declaration that plaintiff was treated for various ailments, including chest pain, nasal congestion, headache, coughing, wheezing, allergies, and heart palpitations. Item 82. Plaintiff complained of exposure to ETS continually during his stay at Oneida. *Id.*, ¶¶ 11, 13, 14, 18, 20, 26, 27, 28, 31, 50, 52. Plaintiff was treated with diet restrictions, vitamins, and medications such as nasal spray, cough syrup, and antacids. *Id.*, ¶¶ 14-16, 19, 21, 26, 31, 33, 36. A chest x-ray taken in June 1995 indicated that plaintiff's lungs were normal. *Id.*, ¶ 24. Plaintiff requested a "window cube," a cubicle in the dormitory next to a window, which was approved on May 9, 1995 for a 30-day evaluation period. *Id.*, ¶ 39. Plaintiff remained in the window cube until August 1995, when Dr. Grabo determined that plaintiff's medical condition did not warrant a window cube. *Id.*, ¶ 42. It was the facility policy that window cubes were assigned to inmates with "documented, severe, disabling smoke-related illness." *Id.*, ¶ 58.

In his declaration, Dr. Benjamin Augustin stated that he is the Facility Health Services Director at Livingston and has held the position since 1991. Item 85, ¶ 1. He

reviewed plaintiff's medical records and acknowledges that plaintiff has a history of complaints of headaches, allergies, and hay fever. *Id.,* ¶ 6. On September 28, 1995 and October 4, 1995, plaintiff requested that he be moved to a window cube. *Id.,* ¶¶ 14, 16. Dr. Augustin denied the request because plaintiff did not have a medical condition such as asthma or other respiratory illness which might warrant a change in location. *Id.* A chest x-ray taken on January 15, 1996 indicated that plaintiff's chest was normal. *Id.,* ¶ 34. While at Livingston, plaintiff continually complained of ETS exposure. *Id.,* ¶¶ 14, 15, 16, 17, 23, 24, 26, 29, 30, 33, 51.

In response to the motion, plaintiff filed an affidavit, in which he stated that the medical staffs at both Oneida and Livingston failed to accurately record his complaints about ETS. Item 102, ¶ 6. He states that his complaints of eye, nose, and throat irritation, headaches, chest and heart problems, dizziness, coughing, and shortness of breath are all consistent with excessive exposure to ETS. *Id.,* ¶ 22. Plaintiff also states that the ventilation fans at Livingston were frequently turned off due to their noise, and that a cloud of smoke often hung in the air in the dormitory at both Livingston and Oneida. *Id.,* ¶¶ 36, 37. Plaintiff states that at Oneida, at least half of the inmates smoked in the dormitory units. *Id.,* ¶¶ 37-38. At Livingston, there were more smokers in the dormitories than at Oneida. *Id.,* ¶ 41.

## **DISCUSSION**

Defendants argue that plaintiff has failed to raise an issue of fact that he was exposed to an unreasonably high level of ETS. Item 87, pp. 4-8. They also argue that plaintiff's injuries are not sufficiently severe to form the basis of an Eighth Amendment

claim (*id.,* pp. 8-11) and that neither Dr. Grabo nor Dr. Augustin acted with deliberate indifference to plaintiff's medical needs. *Id.,* pp. 12-13. Defendants further argue that plaintiff has shown no damages causally related to exposure to ETS (*id.,* pp. 14-16), that defendants Hollins, McClellan, Casey, Belliner, and Bryington were not personally involved in the alleged constitutional violations (*id.,* pp. 16-20), and that all defendants are entitled to qualified immunity. *Id.,* pp. 21-24.

## I. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under governing law . . . ." *Id.*

Under Rule 56, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2nd Cir. 1994). A party moving for summary judgment can meet its burden by producing evidence showing the absence of a genuine issue of material fact or by pointing out to the court that there is an absence of evidence supporting one or more essential elements of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A party opposing summary judgment "must set forth

specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), and must come forward with significant probative evidence in support of its factual allegations. *Capital Imaging Assoc., PC v. Mohawk Valley Medical Assoc., Inc.*, 996 F.2d 537, 542 (2nd Cir.), *cert. denied*, 510 U.S. 947 (1993).

The court's function in deciding a summary judgment motion "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2nd Cir.), *cert. denied*, 502 U.S. 849 (1991). The evidence and inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion . . . ." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). However, summary judgment will not be denied merely on the basis of a "metaphysical doubt" about the facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), "or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982.

## II.     EIGHTH AMENDMENT CLAIM

The Eighth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, prohibits the imposition of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). "[D]eliberate indifference to serious medical needs of prisoners" is a form of cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. A plaintiff "states a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference,

exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993).

The deliberate indifference standard has an objective and a subjective component. Objectively, a plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). In the context of a ETS claim, the plaintiff must show that he is being exposed to "unreasonably high levels of ETS." *Helling,* 509 U.S. at 35. "The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also 'whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'" *Warren v. Keane,* 196 F.3d 330, 333 (2nd Cir. 1999) (quoting *Helling,* 509 U.S. at 36). The subjective component "require[s] an inquiry into the defendant's state of mind." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The deliberate indifference standard is not met by a showing of inadvertence or negligence that causes unintended injury to a prisoner. *Farmer*, 511 U.S. at 835*; Davidson v. Cannon*, 474 U.S. 344, 348-49 (1986). A prison official can not be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Additionally, in *Helling,* the Court held that a plaintiff could satisfy this test without necessarily demonstrating that the exposure had inflicted actual harm upon the plaintiff if the ETS exposure posed an unreasonable risk of serious damage to the inmate's future health. *Helling,* 509 U.S. at 35.

### A.     Level of ETS

Defendants argue that plaintiff has failed to raise an issue of fact that he was exposed to an unreasonably high level of ETS.  Defendants have submitted evidence that the dormitories at both Oneida and Livingston were ventilated by fans and windows, and they contend that the ventilation systems at both facilities were fully functional for the time period in question, exceeding all standards for air flow and recirculation.  While inmates were allowed to smoke in their cells, defendants contend that the level of ETS in the area was "minor."  Item 87, p. 5.  In response, plaintiff has submitted an affidavit in which he states that while he is unable to quantify the amount of ETS, he noted that there was often a cloud of smoke floating in the air in the dorm.  Plaintiff estimated that at least half of the inmates were smokers.  He also stated that ventilation fans would frequently be turned off, specifically by defendant Bryington.  Item 102, ¶¶ 35, 37, 38, 41.

It is beyond dispute that for a plaintiff to allege an Eighth Amendment claim for ETS exposure, he need not show the same level of ETS exposure as was present in *Helling.* *See Warren v. Keane,* 196 F.3d at 333 (rejecting the argument that Eighth Amendment right to be free from exposure to unreasonable ETS levels is limited to the facts in *Helling,* where plaintiff was double-celled with an inmate who smoked five packs of cigarettes daily).  In *Warren,* summary judgment was denied where the plaintiffs alleged confinement in a poorly ventilated area, surrounded by large numbers of smoking inmates.  In *Davis v. State of New York,* 316 F.3d 93 (2nd Cir. 2002), the Second Circuit found that plaintiff's allegation that he was housed in areas where the majority of inmates were smokers such that "'the smell of smoke fills the air and enter[s] my cell in a manner as though I was

myself smoking" may be sufficient to create an issue of fact as to the level of ETS exposure.  The case was remanded to the District Court to consider whether plaintiff had exhausted his administrative remedies with regard to his complaints of ETS.  *Davis,* 316 F.3d at 100.  Similarly, summary judgment was denied in a case in which the plaintiff offered evidence of ETS exposure in a poorly ventilated housing unit with 41 smokers. *McPherson v. Coombe,* 29 F. Supp. 2d 141 (W.D.N.Y. 1998).  In contrast, in *Zaire v. Artuz,* 2003 WL 230868 (S.D.N.Y. February 3, 2003), the court found that plaintiff had not been exposed to unreasonable levels of ETS where he alleged exposure for a period of only five months and only in common areas, not in his room.  Here, plaintiff has alleged that despite ventilation systems, he was surrounded by smokers in a dormitory setting.  He states that a cloud of smoke hung visibly in the air.  Although the living areas at Oneida and Livingston are not alleged to be "poorly ventilated," the court cannot say that the level of ETS was not unreasonable given the large number of smoking inmates in a common living area. Accordingly, the court finds that plaintiff has raised an issue of fact regarding the level of exposure to ETS.

      **B.**    **"Sufficiently Serious" Medical Condition**

Defendants argue that the injuries alleged by plaintiff are not sufficiently serious to form the basis of an Eighth Amendment claim.  As discussed above, the Eighth Amendment is not implicated unless an inmate's medical condition is "sufficiently serious." *Wilson*, 501 U.S. at 298.  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2nd Cir. 2000).

The court previously examined this issue on the defendants' first motion for summary judgment. Plaintiff has complained of shortness of breath, wheezing, occasional chest pain, difficulty sleeping, and headaches. While these injuries may not *per se* amount to a serious medical condition, prolonged exposure to ETS, which exacerbates those conditions and creates a significant risk of more serious illness, may be considered sufficiently serious to implicate the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. at 35 (the potential future health risk caused by exposure to second-hand smoke may form the basis for relief under the Eighth Amendment); *cf. White v. Napoleon*, 897 F.2d 103, 109 (3rd Cir.1990) (allegation that refusal to provide medication substantially increased risk of peptic ulcer was sufficient to state a viable Eighth Amendment claim for denial of medical care). As the Supreme Court recognized in *Helling*, prison officials may not ignore medical conditions that are "very likely to cause serious illness and needless suffering" in the future even if the prisoner has "no serious current symptoms." *Helling*, 509 U.S. at 33. In *Warren v. Keane*, 937 F. Supp. 301, 305 (S.D.N.Y. 1996), *aff'd*, 196 F.3d 330 (2nd Cir. 1999), the court held that allegations of exposure to high levels of ETS which aggravated plaintiffs' asthma and sinus conditions and increased the risk of more serious cardiovascular conditions were sufficient to support an Eighth Amendment claim.

Plaintiff has alleged that his respiratory and other health problems were aggravated by constant exposure to ETS over an extended period. The court notes that plaintiff has not been able to secure the services of a medical expert, and that proof of his medical condition is found in the ambulatory health records from Livingston and Oneida. The

seriousness of plaintiff's medical condition is a disputed material fact precluding this court from granting summary judgment to defendants.

### C.      Deliberate Indifference

Defendants argue that neither Dr. Grabo nor Dr. Augustin acted with deliberate indifference to plaintiff's medical needs. They state that plaintiff's complaints were taken seriously and treated appropriately, and that "never were they aware of a substantial risk to the health or safety of plaintiff nor did they ignore any such risk." Item 87, p.12.

This argument can be dealt with summarily. A rational fact-finder could conclude that Drs. Grabo and Augustin would have been on notice of the dangers of ETS as early as 1986, the date of a report of the United States Surgeon General indicating that ETS can cause lung cancer in healthy non-smokers. *See Warren v. Keane,* 937 F. Supp. at 306. For a medical doctor to state that in 1995 and 1996 he was unaware of the dangers of ETS is simply incredible. The fact that window cubicles were available to those inmates who had documented respiratory illnesses such as asthma or bronchitis indicates that Drs. Grabo and Augustin were indeed aware that ETS was harmful to an inmate's respiratory health. While Drs. Grabo and Augustin responded to and treated plaintiff's respiratory and sinus symptoms, they failed to address plaintiff's concern regarding ETS exposure. The denial of plaintiff's request for a window cubicle appears to be a policy choice based on the inability to provide a window cubicle to every inmate who requested one. Accordingly, plaintiff has raised an issue of fact that Drs. Grabo and Augustin were aware of a substantial risk to plaintiff's health by ETS exposure and that they disregarded that risk.

Plaintiff has thus satisfied both the objective and subjective components of the Eighth Amendment test, and summary judgment must be denied on this ground.

### III.    Damages

Defendants argue that plaintiff has failed to show that he has either sustained or will sustain any injury as the result of his exposure to ETS and that his Eighth Amendment claim must be dismissed. In *Helling v. McKinney,* 509 U.S. 25 (1993), the Supreme Court recognized a claim under the Eighth Amendment for exposure to ETS which poses an unreasonable risk to an inmate's future health. In *Reilly v. Grayson,* 310 F.3d 519 (6th Cir. 2002), defendants argued that the inmate plaintiff had not shown actual injury or injury caused by exposure to ETS. The district awarded compensatory damages based on evidence that the plaintiff had suffered an increased risk of future injury to his health as a direct result of ETS exposure.

At this stage of the proceedings, this court will not dismiss the Eighth Amendment claim. Plaintiff has alleged headaches, difficulty breathing, sinus problems, and heart palpitations. A rational fact-finder could conclude that plaintiff was exposed to an unreasonably dangerous level of ETS which violated contemporary standards of decency, and that plaintiff's health problems were aggravated by that exposure. *Warren v. Keane,* 937 F. Supp. 301, 305 (S.D.N.Y. 1996), *aff'd,* 196 F.3d 330 (2nd Cir. 1999).

### IV.    Personal Involvement

Defendants Hollins, McClellan, Casey, Belliner, and Bryington argue that they were not personally involved in any deprivation of plaintiff's constitutional rights.  "'[P]ersonal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2nd Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2nd Cir. 1994)).  There are a number of ways of establishing personal involvement.

> The defendant may have directly participated in the infraction.  . . .  A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong . . . .  A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a custom or practice to continue . . . .  Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event . . . .

*Williams v. Smith*, 781 F.2d 319, 323-24 (2nd Cir.1986) (internal citations omitted).  Under any theory of personal involvement, the plaintiff must show that a responsible official knew or had a reason to know of a constitutional violation and failed to take reasonable steps to prevent the violation.  *Wright*, 21 F.3d at 501.

Plaintiff alleges that he repeatedly complained to medical and supervisory staff at both Oneida and Livingston regarding the effect of ETS exposure on his health. He filed grievances objecting to his exposure to ETS at both facilities and served on an Inmate Liaison Committee (ILC) at Livingston which met with supervisory staff on issues of general concern to inmates, including ETS.  Defendant Hollins was the Superintendent of Oneida, and defendants McClellan and Belliner were Superintendents at Livingston during the relevant time period.  All three Superintendents were aware of plaintiff's complaints regarding ETS and implemented the smoking policies at their respective facilities which permitted smoking in living areas.  A later policy implemented in 2001 banning all indoor smoking reflects a recognition on the part of DOCS officials of the need to protect inmates

from ETS. *See Denis v. New York State Dep't of Corr. Svces.,* 2006 WL 217926, *20 (S.D.N.Y. January 30, 2006), *adopted by* 2006 WL 406313 (S.D.N.Y. February 22, 2006). Thus, a rational fact-finder could find that Hollins, McClellan, and Belliner were aware of the general issue of ETS exposure in the dormitories and of plaintiff's specific concerns of ETS exposure, and allowed the continuation of a smoking policy that violated plaintiff's Eighth Amendment rights. *See Colon v.* Sawyer, 2006 WL 721763, *11 (N.D.N.Y. March 20, 2006) (participation of defendants in administrative grievance process sufficiently demonstrates personal involvement in alleged constitutional violation); McPherson *v. Coombe,* 29 F. Supp. 2d 141, 145 (W.D.N.Y. 1998) (summary judgment for defendant denied on issue of personal liability where Superintendent received inmate grievance regarding ETS exposure and denied plaintiff's request for a smoke-free dormitory). Likewise, defendant Thomas Casey was Deputy Superintendent for Program Services at Livingston and had responsibility, *inter alia*, for the inmate grievance program at that facility. Plaintiff has submitted at least one inmate grievance related to health problems caused by exposure to ETS at Livingston, and he administratively appealed the denial of that grievance. Item 67, ¶¶ 17-18.[1] Additionally, plaintiff states that Casey was a member of the Board of the Inmate Liaison Committee at Livingston and was aware of the issue of ETS exposure yet failed to act on plaintiff's complaints. Thus, there is sufficient evidence to raise disputed material facts as to Casey's personal involvement in the deprivation of Scott's constitutional rights. Finally, defendant Bryington is alleged to have directly

---

[1] The court notes that defendants do not dispute that plaintiff exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) by filing and appealing the denial of grievances regarding ETS exposure at both Oneida and Livingston.

contributed to the ETS in the dormitory at Livingston by smoking in the dormitory and is alleged to have turned off the ventilation fans in the dormitory, contributing to the level of plaintiff's ETS exposure. Plaintiff has raised a factual issue regarding the defendants' personal involvement in the alleged constitutional deprivations, and summary judgment on this basis is therefore denied.

## V.     QUALIFIED IMMUNITY

As they did in their first motion for summary judgment, defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity protects government officials from suits for money damages where "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Warren v. Keane*, 196 F.3d 330, 332 (2nd Cir. 1999), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A defendant is not entitled to qualified immunity if "[t]he contours of the right" asserted by the plaintiff are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In *Helling v. McKinney,* 509 U.S. 25 (1993), the Court held that the Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to future health problems that an inmate may suffer as a result of current prison conditions, even if the inmate "shows no serious current symptoms." *Helling,* 509 U.S. at 33. The Court explained that a plaintiff "states a cause of action under the Eighth Amendment by alleging that [defendants] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling,* 509 U.S. at 35; *see*

*also Warren v. Keane*, 196 F.3d at 333 (*Helling* clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health). Additionally, in *Warren*, the Second Circuit noted that "even before *Helling* was decided, plaintiffs possessed clearly established rights with respect to their health conditions." *Warren*, 196 F.3d at 333. Clearly, a prisoner's right to be free from deliberate indifference to serious medical needs has been established since 1976 when the Supreme Court decided *Estelle v. Gamble*, 429 U.S. 97 (1976).

Plaintiff complains of defendants' practices between April 1995 and May 1996. Whether one defines his claim narrowly as involving the right to be free from ETS, or more broadly as a deliberate indifference under *Estelle v. Gamble*, plaintiff's Eighth Amendment rights were clearly established at the time his claim arose. In *Warren v. Keane,* the District Court stated that prison officials would have known of the dangers of ETS as early as 1986, the date of a report of the United States Surgeon General indicating that ETS can cause lung cancer in healthy non-smokers. *Warren v. Keane,* 937 F. Supp. at 306. Additionally, in *Warren,* the Second Circuit held that "after *Helling*, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health." *Warren v. Keane,* 196 F.3d at 333. In *Warren v. Keane,* the Second Circuit rejected the defendants' argument that the right must be so narrowly defined so as to mirror the facts in *Helling,* where the plaintiff was double-celled with another inmate who smoked five packs of cigarettes daily; a court need not have

passed on the identical conduct in order for its illegality to be "clearly established." See *LaBounty v. Coughlin,* 137 F.3d 68, 74 (2nd Cir. 1998).

When the contours of a plaintiff's rights were clearly defined at the time of the underlying incident, a public official may still assert the defense of qualified immunity if the official reasonably believed that his or her actions did not violate the plaintiff's rights. *Warren*, 196 F.3d at 333 (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2nd Cir.1996)). Defendants argue that even if plaintiff's Eighth Amendment rights were clearly established, they reasonably believed that their practices did not violate those rights. They contend that the smoking policy in place at the time prohibited smoking in public areas, but allowed smoking in living quarters and was thus an effort to balance the requirements of the New York State Clean Air Act and the realities of prison life. Item 87, pp. 23-24. Plaintiff's allegations, if believed, describe a living environment permeated with smoke, with the ventilation fans at Livingston often turned off. Addressing the identical issue in *Warren v. Keane*, the Second Circuit held that "[u]ntil the facts are determined, we are unable to say that any prison official reasonably could have believed that the alleged severe exposure to ETS did not violate the plaintiffs' Eighth Amendment rights." *Warren*, 196 F.3d at 333. As in *Warren*, defendants' qualified immunity defense rests on disputed material facts. Accordingly, this court must again deny summary judgment on the qualified immunity defense.

## **CONCLUSION**

For the above stated reasons, defendants' motion for summary judgment is denied. The court will meet with counsel on Monday, August 8, 2006, at 11:15 a.m. to set a further schedule.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July 14, 2006
p:\opinions\1996\96-351.may306